IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:12-CV-701-H

RAINA CONNER, Administratix )
of the Estate of Adam Wade )
Carter )
)
    Plaintiff, )
)
)
)
    v. )
)
)
WAKE COUNTY, SHERIFF DONNIE )
HARRISON, in his official and )
individual capacities, )
TAVARES THOMPSON, in his )
official and individual ) **ORDER**
capacities, KELLY S. )
MITHCELL, in her official and )
individual capacities, JOHN )
AND JANE DOES 1-10, )
Individually and in their )
official capacities as Deputy )
Sheriffs of Wake County, and )
THE OHIO CASUALTY INSURANCE )
COMPANY, in its capacity as )
Surety on the Official Bond )
of the Sheriff of Wake )
County, )
)
    Defendants. )

    This matter is before the court on defendants' motion for summary judgment. Plaintiff has responded, and defendants have replied. Plaintiff has also filed a motion to file a sur-reply, attaching her proposed sur-reply. Defendants object to the motion to file a sur-reply. Defendants have also filed a motion

in limine to exclude plaintiff's expert witness.  Plaintiff has also responded to the motion in limine, and defendants have replied.  These matters are ripe for adjudication.

The court has reviewed plaintiff's motion to file a sur-reply as well as defendants' objections thereto.  The court GRANTS plaintiff's motion to file a sur-reply, and the sur-reply is considered in the court's decision on the motion for summary judgment herein.

**BACKGROUND**

This matter arises out of the death of Adam Carter on February 11, 2012.  A Wake County Sheriff's Deputy was dispatched to the home where Adam Carter was staying in response to a 911 call from his uncle.  Within minutes of the deputy's arrival at the scene, Carter was fatally shot.  This case was brought by the decedent's mother, Raina Conner.  The Third Amended Complaint in this matter seeks compensatory and punitive damages arising out of eight causes of action including three claims pursuant to 42 U.S.C. § 1983 (a Monell claim, an excessive force claim and an inadequate training and supervision claim) and claims for negligence/gross negligence/willful and wanton misconduct, negligent hiring/retention, assault and battery, North Carolina Constitutional claims, and Liability of Official Bond.

**STATEMENT OF THE FACTS**

On February 11, 2012, Adam Carter was staying at the home of his uncle Todd McElfresh. Carter, who had recently been hospitalized for emotional and substance abuse issues, was intoxicated and had become emotionally distraught and wanted to be transported back to a psychiatric facility, Holly Hill Hospital ("Holly Hill"). No one answered the phone when McElfresh and/or Carter attempted to call Holly Hill, so McElfresh called 911 and requested assistance in having Carter transported to a treatment facility. McElfresh's call was transferred to a dispatcher, defendant Kelly Mitchell. McElfresh informed the dispatcher that Carter had recently received in-patient care for mental health and substance abuse issues and needed transport to a mental health facility. Wake County Sheriff's deputies were dispatched to the house at 5425 Live Oak Trail, Raleigh, to respond. Wake County Sheriff's Department Deputy Tavares Thompson ("Deputy Thompson") was first to arrive at the scene. After briefly conferring with McElfresh, Deputy Thompson followed McElfresh into the residence. Upon entering the home, Deputy Thompson saw Carter at or near the top of a four-step stairwell leading from the foyer or entryway up to a living area. McElfresh told Carter that his ride was here. Carter began descending the stairs. At some point, Deputy

Thompson realized Carter had a knife in his hand. Deputy Thompson told Carter to drop the knife several times. Carter did not comply, and Thompson fired two shots, killing Carter.

While the above provides a general framework for the events of February 11, 2012, the details of the brief time (mere second to minutes) between Deputy Thompson entering the residence and the firing of his weapons are disputed. These factual issues are heavily briefed by the parties, and the court need not repeat them in great detail. Chief among the disputes are (1) exactly where Deputy Thompson was standing in relation to the front door (whether back against a wall or directly in front of the door); (2) the position of the knife during Carter's descent on the stairs (whether he changed hands, raised the knife, etc.); and, (3) Carter's speed and agility in descending the stairs (whether falling down drunk or lunging at the deputy). However, viewing the evidence in the light most favorable to the non-moving party, here the plaintiff, the court notes the following evidence: Thompson testified that he saw Carter with the knife in his hand while Carter was on the second step and while Thompson had just crossed the threshold of the front door. The front door remained opened at all times. The knife Carter had in his hand was a small paring knife. Carter slowly staggered down two steps while holding on to the wall to support himself.

4

McElfresh testified that Carter never rushed toward Thompson or made any aggressive moves or steps.

**COURT'S DISCUSSION**

**I.     Standard of Review**

Summary judgment is appropriate pursuant to Rule 56 of the Federal Rules of Civil Procedure when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248, but "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Summary judgment is not a vehicle for the court to resolve disputed factual issues. Faircloth v. United States, 837 F. Supp. 123, 125 (E.D.N.C. 1993). Instead, a trial court reviewing a claim at the summary judgment stage should determine

5

whether a genuine issue exists for trial. Anderson, 477 U.S. at 249.

In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson, 477 U.S. at 247-48. The evidence must also be such that a reasonable jury could return a verdict for the non-moving party. Id. at 248. Accordingly, the court must examine "both the materiality and the genuineness of the alleged fact issues" in ruling on this motion. Faircloth, 837 F. Supp. at 125.

**II. Analysis**

   A. Excessive Force Claim

Whether excessive force was used is determined by applying a standard of objective reasonableness to the particular circumstances of a case. In Clem v. Corbeau, the Fourth Circuit held:

> Indisputably, the Fourth Amendment prohibition on unreasonable seizures bars police officers from using excessive force against a free citizen, like Clem. *See Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Whether an officer has used excessive force is judged by a standard of objective

6

> reasonableness. *Id.* at 396-97, 109 S.Ct. 1865. We do not inquire into an officer's motives, intentions, or tendencies, and instead determine "whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Elliott,* 99 F.3d at 642 (citing *Graham,* 490 U.S. at 396-97, 109 S.Ct. 1865).

Clem v. Corbeau, 284 F.3d 543, 549-50. Each set of facts and circumstances of the specific case must be carefully observed, taking "care to consider the facts from the perspective of a reasonable officer on the scene, and avoid judging the officer's conduct with the '20/20' vision of hindsight." Id., (quoting Graham, 490 U.S. at 396-97).

Since deadly force is unmatched against countervailing governmental interests, deadly force is justified only where a reasonable officer has "sound reason to believe that a suspect poses a threat of serious physical harm to the officer or others. Id. (quoting Elliott, 99 F.3d at 642). Where no immediate threat exists, deadly force is not justified.

Here, there are substantial fact questions in dispute which preclude the entry of summary judgment as to the excessive force claim. Defendants' argument in support of summary judgment relies on defendants' version of the facts. Because these facts are in dispute and because when the facts are viewed in the light most favorable to the plaintiff a reasonable jury could find for plaintiff, summary judgment is inappropriate.

7

B. <u>Qualified Immunity</u>

Qualified immunity protects government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). To determine whether a public official is entitled to qualified immunity, the court must examine: (1) whether the facts alleged make out a violation of a constitutional right; and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." <u>Pearson v. Callahan</u>, 555 U.S. 223, 232 (2009) (quoting <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001)). The court may look to either aspect of the test first when determining the issue of qualified immunity. <u>Id.</u> at 236. It is well-established that a law enforcement officer may not employ deadly force against an individual who does not present an immediate threat of harm. See <u>Graham</u>, <u>supra</u>. As summary judgment on the excessive force claim is precluded because of disputed facts, so also is a decision on qualified immunity at this stage of the litigation.

C. Monell Claim and Inadequate Training and Supervision[1]

It is well settled that a supervisor may not incur liability pursuant to a subordinate's violation of § 1983 under the doctrine of respondeat superior. Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977). However, a supervisor may otherwise be held liable in certain circumstances for constitutional injuries inflicted by his or her subordinates if a plaintiff demonstrates:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a "pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). To establish the first element, a plaintiff must show "that the supervisor had knowledge of conduct by the subordinate where the conduct posed a pervasive and unreasonable risk of constitutional injury to the plaintiff." Id. A pervasive and unreasonable risk of harm requires evidence that the "conduct is widespread, or at least has been used on several different occasions." Id. To

---

[1] In her response, plaintiff notes she does not oppose the motion for summary judgment as it relates to Wake County. Therefore, summary judgment is granted as to defendant Wake County.

establish the second element, plaintiff must show "continued inaction in the face of documented widespread abuses." Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984). The Fourth Circuit has held that "a showing of mere negligence will not meet" the "very high standard" of deliberate indifference. Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). Finally, to establish the liability of a supervisor, there must be an affirmative causal link between the inaction of the supervisor and the harm suffered by the plaintiff. Slakan, 737 F.2d at 376.

A local government entity cannot be held liable under § 1983 on a respondeat superior theory of liability. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978). Instead, to establish liability of the government entity, a plaintiff must demonstrate that (1) a government actor deprived the plaintiff of her federal rights, and (2) the harm was the result of an official policy or custom of the local entity. Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003). The court notes that the Sheriff is a "person" for purposes of § 1983 and is not an arm of the State for Eleventh Amendment purposes. Boyd. v. Robeson County, 169 N.C. App. 460.

Plaintiff has presented sufficient evidence to support a finding that defendants violated plaintiff's constitutional

10

rights and the court, therefore, assumes so for purposes of this claim. Therefore, the issue before this court is whether there is sufficient evidence that the constitutional violation was the result of an official policy or custom of the the Sheriff for Wake County.

The Fourth Circuit has held that there are four ways that a local government entity may be held liable for a policy or custom:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

Id., 326 F.3d at 471 (quoting Carter, 164 F.3d at 218).

Here, as to both the inadequate training and supervision claim and the Monell claim, plaintiff argues that defendant failed to properly train officers on how to respond to mentally and/or emotionally disturbed individuals. Defendant argues that Sheriff Harrison is entitled to summary judgment on these claims because plaintiff has presented no evidence of inadequate policies or training. Defendant argues that the Wake County Sheriff has not failed to properly train its officers and that its training exceeds the state-mandated minimum of training for

11

its deputies.  Defendant notes that the Sheriff's policy regarding the use of force tracks applicable case law, in that it allows deadly force when the officer is facing imminent death or serious bodily harm.  All Wake County deputies received training on dealing with mentally ill individuals in Basic Law Enforcement Training.  Additionally, the Sheriff's Office conducted an in-service training in 2010 specifically focusing on interactions with mentally ill persons.

Defendant additionally argues that there is no evidence that any such failure was the "moving force" behind the constitutional violation.  Defendant argues that plaintiff has produced no evidence that the training provided was deficient in any way or that a written policy specific to dealing with mentally ill individuals is necessary.  Furthermore, plaintiff has not introduced such a policy from any other law enforcement agency in Wake County, North Carolina, or from anywhere in the United States.  Plaintiff does cite to the Internal Association of Chiefs of Police statement regarding dealing with emotionally disturbed individuals.  Defendant also argues that even if plaintiff has shown a deficiency in training, there has been no showing that additional training or different policies would have changed the outcome.  In other words, defendant contends

plaintiff cannot show a causal link between the failure in training or the deficient policy and the death of Adam Carter.

Plaintiff counters, noting that Thompson received "practically no training" regarding situations involving emotionally disturbed persons. At his deposition, he could not remember anything he learned about how to handle such encounters. Thompson did admit in his deposition that it would be better practice to have a backup officer with him. Plaintiff argues that the evidence demonstrates there is no consistent or reasoned response to encounters with emotionally disturbed individuals. Plaintiff contends that the evidence shows that defendant was deliberately indifferent to a "glaring need" for proper training and policies regarding interactions with emotionally disturbed individuals.

Plaintiff points to the following record evidence in support of her inadequate training and her Monell claim, specifically the causal link between the lack of training and Mr. Carter's death:

- Wake County Sheriff's Department had no written policies or procedures related to suicide-by-cop encounters despite a study indicating 36% of all officer-involved shootings can be characterized as suicide by cop.

- The Department provides no training regarding the response strategy of tactical withdrawal and no field training regarding suicide-by-cop incidents.

13

- The number of shooting incidents involving Wake County Sheriff's Department personnel and emotionally disturbed persons show a variety of responses and evidence a lack of proper training.

Plaintiff notes that despite direct knowledge of the prior incidents in Wake County, defendant Harrison failed to implement proper training and failed to implement any written policies or procedures related to interactions with emotionally disturbed persons.

The court finds that plaintiff has brought forth enough evidence to survive summary judgment. Defendant has not shown he is entitled to judgment as to the Monell claim and the inadequate training/supervision claims regarding Deputy Thompson.

D. Defendant Mitchell

As to plaintiff's claim of inadequate training as it relates to dispatcher Kelly Mitchell, defendant contends plaintiff has failed to come forward with any evidence of inadequate training of Mitchell. Wake County telecommunicators attend a forty-hour telecommunicator school. Additionally, the Sheriff's Office provides sixteen hours of training each year. On February 11, 2012, Mitchell was a telecommunicator supervisor. Additionally, plaintiff has shown no causal link between any lack of training and Mr. Carter's death. The court

14

agrees and finds that plaintiff has failed to come forward with any evidence of inadequate training of Mitchell. Therefore, summary judgment is granted as to inadequate training/Monell claims as they relate to defendant Mitchell's actions.

As to any claims asserted against defendant Mitchell directly, plaintiff argues that Mitchell failed to provide critical information to Thompson and that a jury should determine whether defendant Mitchell shares in liability for the improper response to this call. Defendant notes that plaintiff cites no case law in support of her claims against Mitchell. Second, Thompson admits in his deposition that he knew other officers were also responding. He testified Mitchell gave information regarding the need for a CIT officer, but he did not hear it on the radio. The court finds defendant Mitchell is entitled to summary judgment as to any claims purportedly asserted against her directly.

    E. <u>State Law Negligence Claims: Claims for Negligence, Gross Negligence, Willful and Wanton Misconduct, Negligent Hiring and Retention</u>

Plaintiff, in her response, acknowledges that, under current law, insurance policies such as that purchased by Wake County which purport to not cover claims for which governmental immunity would be a defense have been held enforceable. Thus, plaintiff concedes that governmental immunity remains a defense

15

to plaintiff's official capacity state-law claims except to the extent of the limited relief provided by the Sheriff's bonds. It is acknowledged in defendants' brief that if it were determined that Sheriff Harrison was negligent, then the $20,000 provided by the Ohio Casualty bonds would apply, meaning he would not have governmental immunity from $0.01-20,000 of a claim but, as described more fully in defendants' memorandum, would have immunity for any claim in excess of $20,000.

Furthermore, as public officials, Sheriff Harrison and Deputy Thompson are immune from claims based on negligence in their individual capacities. "Generally, 'a public official is immune from personal liability for mere negligence in the performance of his duties, but he is not shielded from liability if his alleged actions were corrupt or malicious or if he acted outside and beyond the scope of his duties.'" Perry v. Pamlico Cnty., No. 4:13-CV-107-D, 2015 WL 690896, at *10 (E.D.N.C. Feb. 18, 2015), quoting Slade v. Vernon, 110 N.C.App. 422, 428, 429 S.E.2d 744, 747 (1993), implied overruling on other grounds in Boyd v. Robeson County, 169 N.C.App. 460, 621 S.E.2d 1 (2005). Therefore, the negligence claims are dismissed against Harrison and Thompson in their individual capacities.

16

F. <u>Assault and Battery</u>

Defendant's only argument for dismissal regarding assault and battery depends on summary judgment being entered on the excessive force claim under § 1983. Therefore, the motion for summary judgment is DENIED as to the claim for assault and battery against defendant Thompson.

**III. Motion to Exclude Plaintiff's Expert**

Defendants move, pursuant to Federal Rule of Evidence 702 to exclude plaintiff's expert witness, Melvin Tucker ("Tucker") from offering any opinion in this matter. Plaintiff has responded, and defendant has replied. Defendants argue that plaintiff's expert should be excluded from testifying because he relied on insufficient information in forming his opinion, specifically that he erroneously relied on several assumptions not established in the record and on an inappropriate model policy to establish the standard. Furthermore, they contend Tucker's opinion regarding what Deputy Thompson could have done is not relevant. Plaintiff counters, noting that Tucker has specialized knowledge regarding law enforcement practices and procedures, properly sought to ascertain all relevant facts and that his opinions are proper and should not be stricken.

The court finds no reason to exclude plaintiff's expert witness from testifying, noting that plaintiff will, of course, be required to lay the proper foundation for submission of Mr. Tucker as an expert at the time of trial. At that time, defendant will have an opportunity to cross-examine plaintiff's expert as to his qualifications. Additionally, if he is accepted as an expert, the court will also entertain at that time any motions to strike portions of his testimony as appropriate and as desired by the parties. Therefore, defendants' motion in limine to exclude plaintiff's expert witness from testifying is DENIED WITHOUT PREJUDICE.

## **CONCLUSION**

For the foregoing reasons, plaintiff's motion to file a sur-reply [DE #74] is GRANTED. Defendants' motion to exclude plaintiff's expert witness [DE #64] is DENIED WITHOUT PREJUDICE. Defendants' motion for summary judgment [DE #60] is GRANTED IN PART and DENIED IN PART. Specifically, defendants' motion for summary judgment is DENIED as to plaintiff's claim of excessive force as well as inadequate training and supervision and Monell except as they pertain to defendant Mitchell. The motion is GRANTED as to the claims regarding defendant Mitchell, and she is dismissed. Furthermore, the motion for summary judgment is DENIED as to plaintiff's claim for assault and battery against

18

defendant Thompson. The remaining state law claims are dismissed against the parties in their individual capacities due to public official immunity and are dismissed against the parties in their official capacities due to governmental immunity except as to the limited application of the bond as described more fully supra. As consented to in the plaintiff's memorandum, defendant Wake County is DISMISSED as a party, and plaintiff's direct claim under the North Carolina Constitution (Plaintiff's Seventh Claim for Relief) is DISMISSED.

Pursuant to Local Civil Rule 101.2, EDNC, and Rules 16 and 53 of the Federal Rules of Civil Procedure, the court ORDERS a court-hosted settlement conference.

United States Magistrate Judge Robert B. Jones, Jr. is hereby appointed as settlement master. Magistrate Judge Jones is directed to meet with the parties and supervise negotiations, with an aim toward reaching an amicable resolution of the issues. Magistrate Judge Jones is given full authority to establish such rules as he may desire, which shall be binding upon the parties and their counsel during the course of the conference. The conference will be conducted at a time and place selected by Magistrate Judge Jones upon notice to the parties.

In order to allow sufficient time for the settlement conference, the trial of this matter is hereby continued from the court's April 13, 2015, calendar. This matter will be scheduled for pretrial conference during the undersigned's June 15, 2015, civil term. A specific trial date will be set at or following the pretrial conference, with trial to commence no sooner than two (2) weeks after the pretrial conference. The parties' joint motion to continue [DE #87] is deemed moot.

This <u>12th</u> day of March 2015.

_____
Malcolm J. Howard
Senior United States District Judge

At Greenville, NC
#26